FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 06, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KYLE C.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:17-CV-3167-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 12, 16. Attorney D. James Tree represents Kyle C. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On June 19, 2013, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, alleging disability since July 26, 2013, due to chronic pancreatitis. Tr. 160, 253. Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on August 6, 2015, Tr. 36-83, and issued an unfavorable decision on June 29, 2016, Tr. 20-30. The Appeals Council denied review on July 31, 2017. Tr. 1-5. The

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

ALJ's June 2016 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 29, 2017. ECF No. 1.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on December 25, 1980, and was 32 years old on the disability application date, June 19, 2013. Tr. 160. He completed high school in 1999. Tr. 254. Plaintiff's disability report indicates he stopped working because of his condition(s) on August 30, 2013. Tr. 253. At the administrative hearing, Plaintiff testified he had, however, continued to work small odd jobs for cash. Tr. 70-71. These jobs were in metal fabrication, which involved cutting and welding parts, grinding, sweeping, and picking up scrap metal and garbage, and mechanical work on a race truck. Tr. 70-71.

Plaintiff applied for and received unemployment benefits from September 2013 to February 2014. Tr. 48. He testified he reported each week during that time period that he was ready, able and willing to work and was actively looking for work. Tr. 49. He applied for mechanic jobs but had failed pre-employment drug screens for any potential positions. Tr. 48-49.

Plaintiff stated he first used marijuana recreationally at age 15 and stopped at age 18. Tr. 47. He then began using marijuana for medical purposes in 2011 or 2012. Tr. 48. He indicated the first thing he does every morning is smoke marijuana, Tr. 60, and he currently will use a half ounce of marijuana per week, on average, to alleviate his pain, Tr. 47.

Plaintiff stated he began to experience stomach pain in November of 2010, but the pain did not interfere with his ability to work until 2011. Tr. 53. He described an episode of stomach pain as extreme pain in his right, mid-abdominal

area that resulted in nausea, diarrhea, chills and hot flashes. Tr. 56. When he experiences an episode of stomach pain, it can cause him to drop to the ground and ball up in the fetal position. Tr. 53-55. If he is unable to control his stomach pain by lying down and taking his medications, he will go to the emergency room to receive additional pain medication. Tr. 56-57.

Plaintiff testified the pain has progressively gotten worse and the flare ups occur more frequently. Tr. 54. He indicated he now has pain every day. Tr. 57. However, Plaintiff did state he does "pretty well" if he sticks to a low to non-fat diet, and his pain level is also helped by using medical marijuana and taking Viokase enzyme pills. Tr. 55, 66.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision

supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 29, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22.

At step two, the ALJ determined Plaintiff had the following severe impairment: gastrointestinal disorder/pain disorder associated with psychological and physical factors. Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 24.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work with the following limitations: he could lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; he could stand or walk for approximately six hours and sit for approximately six hours per eight-hour work day with normal breaks; he could frequently climb ramps, stairs, ladders, ropes or scaffolds; he could frequently stoop, crouch and crawl; and he must avoid workplace hazards such as dangerous machinery or working at unprotected heights. Tr. 24.

At step four, the ALJ determined Plaintiff was not able to perform any of his past relevant work. Tr. 28-29.

At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of Cashier II; Assembler, Production; and Cleaner, Hospital. Tr. 29-30. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 19, 2013, through the date of the ALJ's decision, June 29, 2016. Tr. 30.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) failing to properly assess the medical evidence from Leslie Schneider, Ph.D., and Thomas B. Curtis, M.D.; (2) failing to find Plaintiff's chronic pancreatitis was a severe, medically-determinable impairment; (3) failing to properly assess whether Plaintiff was disabled under Listing 5.06; and (4) improperly discrediting Plaintiff without a specific, clear and convincing reason to do so. ECF No. 12 at 3-4.

///

# DISCUSSION[1]

## A.  Step Two

Plaintiff contends the ALJ erred at step two by failing to find Plaintiff's chronic pancreatitis was a severe, medically-determinable impairment.

Plaintiff has the burden of proving he has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows he has a severe impairment. 20 C.F.R. § 416.912(a). Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

In this case, the ALJ concluded Plaintiff had the severe impairment of gastrointestinal disorder/pain disorder associated with psychological and physical factors. Tr. 23. The ALJ noted the comments of reviewing physician Gordon Hale, M.D., that although Plaintiff complained of sudden, severe abdominal pain throughout the record, "there is very little objective evidence of acute illness or specific etiology." Tr. 27-28. The ALJ did not specifically assess chronic pancreatitis as a severe, medically-determinable impairment in this case.

Plaintiff provides multiple record citations for his argument that his chronic pancreatitis is a severe, medically determinable impairment. ECF No. 12 at 2, 12. However, an examination of the citations provided by Plaintiff does not fully support this assertion. *See* Tr. 346-347 (March 13, 2013 notation by Gilbert Ong, M.D., that "Pancreatic EUS shows no definitive chronic pancreatitis."); Tr. 360 (April 11, 2013 assessment by Bryan Wernick, M.D., of questionable abdominal wall pain and questionable history of chronic pancreatitis); Tr. 374-375 (July 4, 2013 Yakima Valley Memorial Hospital report diagnosing only "abdominal pain"); Tr. 393 (December 17, 2012 report of Shayan Irani, M.D., noting the results of examination "could represent mild chronic pancreatitis, or could just be a normal variation."); Tr. 395 (August 19, 2013 report of Dr. Irani assessing only "mild maybe early chronic pancreatitis."); Tr. 402 (July 15, 2013 assessment of Dr. Irani of "chronic abdominal pain with fluctuating pattern to it . . . . He has had episodes of elevated lipases but no documented episodes of acute pancreatitis. Endoscopic ultrasound demonstrated some nonspecific findings, which certainly could represent mild early chronic pancreatitis, but no definitive evidence for the same.");[2] Tr. 421 (August 24, 2013 Yakima Valley Memorial Hospital report

---

[2] The foregoing reports of Dr. Irani, Tr. 393, 395, 402, contradict Dr. Irani's June 17, 2015 letter, also cited by Plaintiff, which states Dr. Irani had treated Plaintiff from August 2012 to October 2014 for chronic pancreatitis, Tr. 544.

diagnosing Chronic Pain); Tr. 435 (June 12, 2013 Yakima Valley Memorial Hospital report diagnosing Abdominal Pain, Unspecified); Tr. 452-453, 456-458, 464-466, 468-469 (April, 5, 2013, June 18, 2013, and July 29, 2013 reports of Craig Whittlesey, M.D., diagnosing only "Abdominal Pain, Unspecified Site" following initial diagnosis (January 10, 2013) of chronic pancreatitis); Tr. 481-483 (April 28, 2014 diagnosis by Henry Y. Kim, M.D., of chronic abdominal pain, probable abdominal wall pain, and "questionable history of chronic pancreatitis."); and Tr. 511-513, 516-520, 529-531 (July 8, 2015, June 11, 2015, and August 27, 2014 Yakima Valley Memorial Hospital reports diagnosing only abdominal pain).

Although chronic pancreatitis has been mentioned in the record, there is no evidence clearly establishing Plaintiff suffered from chronic pancreatitis. *See Webb*, 433 F.3d at 686-687. Even if the Court determined the ALJ erred in failing to find Plaintiff's chronic pancreatitis was a separate severe impairment, the record does not indicate Plaintiff had unique functional limitations from "chronic pancreatitis" as distinct from the limitations caused by the severe gastrointestinal disorder/pain disorder found by the ALJ in this case. Accordingly, any error in this regard would be harmless. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result); *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

### B.    Listing 5.06

Plaintiff further contends the ALJ erred at step three of the sequential evaluation process by failing to properly assess whether Plaintiff was disabled under Listing 5.06. ECF No. 12 at 13-15.

The Listings describe, for each of the major body systems, impairments that are severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). Each Listing specifies the objective medical and other findings needed to satisfy the

criteria of that Listing. A diagnosis alone is insufficient; a medically-determinable impairment must also satisfy all of the criteria of the Listing, 20 C.F.R. § 416.925(d), and Plaintiff bears the burden of establishing that an impairment satisfies the requirements of a Listings impairment, *Tackett*, 180 F.3d at 1098-1099; 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). A generalized assertion of functional problems is not enough to establish disability at step three of the sequential evaluation process. *Tackett*, 180 F.3d at 1100.

Plaintiff asserts he equals Listing 5.06. ECF No. 12 at 14. Listing 5.06 explains when a claimant with "inflammatory bowel disease" has a condition so serious that it is *per se* disabling. 20 C.F.R. Part 404, Subpt. P, App. 1, § 5.06. The Listing sets forth a number of specific factors, **two of which must be present** within the same consecutive six-month period to qualify for a *per se* disability finding. Among the listed factors are (3) "[c]linically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart" and (5) an "[i]nvoluntary weight loss of at least 10 percent from baseline . . . present on at least two evaluations at least 60 days apart." 20 C.F.R. Part 404, Subpt. P, App. 1, § 5.06(B). Plaintiff argues the record reflects these two factors were present; therefore, he is disabled under Listing 5.06(B). The Court does not agree.

As noted above, a claimant establishes a disability pursuant to Listing 5.06B if at least two of the subsections are satisfied. Even assuming Plaintiff met the requirements of subsection 5,[3] Plaintiff has not established that the ALJ erred in finding that none of the other subsections were satisfied.

---

[3]Plaintiff argues there is evidence in the record showing weight loss of at least 10 percent from baseline. ECF No. 12 at 15. However, Plaintiff fails to adequately establish his baseline weight, demonstrate whether any alleged weight

Listing 5.06B(3) is satisfied by the existence of a clinically documented tender abdominal mass palpable on physical examination. Plaintiff concedes he did not have a palpable abdominal mass. ECF No. 12 at 14 (acknowledging Plaintiff "did not have a palpable abdominal mass under a form of inflammatory bowel disease"). This alone defeats Plaintiff's position, as Listing 5.06B(3) requires such a condition to be "clinically documented." Nonetheless, Plaintiff points to evidence in the record of Plaintiff's abdominal pain for which he self-medicated with marijuana because his narcotic medications were reportedly insufficient to control the pain. *Id*. Listing 5.06B(3) is not satisfied by mere abdominal pain and cramping; the existence of a clinically documented tender abdominal mass palpable on examination is necessary. The ALJ did not err in finding Listing 5.06B(3) unsatisfied.

Based on the foregoing, even assuming the record adequately reflected that Plaintiff had a 10 percent weight loss from baseline within a consecutive six-month period, Plaintiff's condition did not medically equal two stated factors as required by the Listing. For this reason, the Court concludes the ALJ did not err at step three of the sequential evaluation process in finding Plaintiff did not meet Listing 5.06B. Tr. 24.

**C.  Medical Opinion Testimony**

Plaintiff also asserts the ALJ erred by failing to provide legally sufficient reasons for discounting the examining medical opinions of Leslie Schneider, Ph.D., and Thomas B. Curtis, M.D. ECF No. 12 at 6-14.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources:  treating physicians, physicians who examine

---

loss was voluntary or involuntary, or show whether the weight loss occurred within a consecutive six-month period as required by the subsection. It was not error for the ALJ to determine that listing 5.06B(5) was unsatisfied.

but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, the ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

### 1. Leslie Schneider, Ph.D.

Dr. Schneider performed a psychological evaluation of Plaintiff on January 9, 2014. Tr. 484-490. Dr. Schneider diagnosed a pain disorder associated with psychological and physical factors and indicated a belief that Plaintiff had unpredictable, severe chronic pain issues. Tr. 489. Dr. Schneider encouraged Plaintiff to pursue disability benefits and opined he would qualify. Tr. 489. Dr. Schneider additionally suggested Plaintiff check into Division of Vocational Rehabilitation because "he does want to do some of his own private business things." Tr. 489.

The ALJ gave some weight to Dr. Schneider's report, finding Plaintiff had severe impairments which caused limitations in his ability work and prevented him

from performing the heavy or very heavy work he had done in the past. Tr. 28. The ALJ agreed with Dr. Schneider's suggestion that Plaintiff contact the Division of Vocational Rehabilitation to explore employment options. Tr. 28. However, the ALJ found Dr. Schneider's opinion that Plaintiff would qualify for disability benefits was not supported by Plaintiff's broad range of activities and the objective medical evidence or record. Tr. 28.

Although Dr. Schneider suspected Plaintiff would qualify for disability benefits, Tr. 489, the evaluation report fails to identify specific functional limitations to support this opinion. Instead, Dr. Schneider noted Plaintiff's activities of daily living consisted of such activities as riding horses, riding bulls, fishing, camping, going on drives, dancing and doing things with his children. Tr. 488; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations); *Johnson*, 60 F.3d at 1432-1433 (holding that the ALJ may disregard a physician's opinion when it is internally inconsistent). Furthermore, Plaintiff testified at the August 2015 administrative hearing that he had continued to work jobs in metal fabrication and doing mechanical work on a race truck, Tr. 70-71, and Plaintiff's disability function report indicates he was able to do all household chores, cleaning, laundry, household repairs, mowing, chopping wood, and feeding and watering of animals, Tr. 276. Tr. 27. As determined by the ALJ, Dr. Schneider's opinion that Plaintiff would qualify for disability benefits was inconsistent with Plaintiff's "wide range of daily activities."

Furthermore, the objective medical evidence does not support Dr. Schneider's opinion that Plaintiff would qualify for disability benefits. As stated by the ALJ, Plaintiff consistently has, at most, moderate tenderness on palpation in the upper right abdominal area, which has been reported as managed with diet,

prescription medications, pancreatic enzyme replacement therapy and medical marijuana. Tr. 27, 55, 66, 371, 544.

Finally, it is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156-1157 (9th Cir. 2001). Whether a claimant is "disabled" under the medical and vocational standards of the Social Security Act is a legal determination reserved for the ALJ, not a medical professional. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

The Court finds the ALJ's analysis with respect to Dr. Schneider's opinions is supported. *See Magallanes*, 881 F.2d at 753 ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (*quoting Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))). The ALJ's interpretation was based on substantial evidence, and she supported her findings with specific and legitimate reasoning.

### 2. Thomas B. Curtis, M.D.

On October 30, 2014, Dr. Curtis examined Plaintiff with respect to his abdominal pain issue. Tr. 477-480. Dr. Curtis diagnosed Plaintiff with chronic abdominal pain and pancreas divisum (a congenital irregularity of the ducts in the pancreas) and reported "[h]e is unable to work." Tr. 26, 479.

The ALJ did not specify the weight accorded to Dr. Curtis' report. Tr. 26. Nevertheless, the Court notes the conclusory statement in the report that Plaintiff was "unable to work" is not explained by Dr. Curtis,[4] nor is it supported by the

///

---

[4] The ALJ indicated, inconsistent with an opinion that Plaintiff was "unable to work," Dr. Curtis advised Plaintiff to become more active and to start physical therapy. Tr. 26, 480.

doctor's objective examination findings.[5]  Dr. Curtis' report does not identify any specific functional limitations or examination results which would support an opinion that Plaintiff was not able to work.  *See Johnson*, 60 F.3d at 1432-1433 (holding that the ALJ may disregard a physician's opinion when it is internally inconsistent).  Furthermore, as with Dr. Schneider, whether a claimant is "unable to work" or disabled is a legal determination reserved for the ALJ, not a medical professional.  *Harman*, 211 F.3d at 1180.

Based on the foregoing, the Court finds the ALJ adequately discussed the report of Dr. Curtis in this case.  Tr. 26.  Any error with respect to the ALJ's failure to specifically address the weight accorded to Dr. Curtis' opinions would be harmless.  *Johnson,* 60 F.3d at 1436 n. 9; *Burch,* 400 F.3d at 679.

**D.    Plaintiff's Symptom Testimony**

Plaintiff also challenges the ALJ's finding that Plaintiff was not entirely credible, Tr. 27.  ECF No. 12 at 15-20.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Lester*, 81 F.3d at 834.  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

///

---

[5]Other than the general observation of Plaintiff sitting curled forward with his head near his knees, then later in a flexed posture position and a finding of tenderness in the right lateral belly, all physical examination results were noted by Dr. Curtis as either "not painful" or "normal."  Tr. 479.

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 25.

The ALJ first indicated Plaintiff's alleged disabling symptoms were not supported by the objective medical evidence of record. Tr. 25-27. A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

As indicated by the ALJ, medical records from Gilbert Ong, M.D., dated just prior to the alleged onset date, stated that the cause of Plaintiff's gastrointestinal disorder was unclear, Tr. 346, and records just after the alleged onset date found only moderate tenderness of the abdomen to the right upper back quadrant, without any distension or masses, Tr. 370. Tr. 26. A July 2013 nuclear gastrointestinal medicine study was normal, Tr. 415-416, and an abdominal exam performed on August 24, 2013, was normal as well, Tr. 421-422. Tr. 26. Although Plaintiff continued to seek treatment for abdominal issues, only some right upper quadrant and periumbilical tenderness was detected in October 2013. Tr. 26, 448. Moreover, as discussed above, on January 9, 2014, Dr. Schneider noted Plaintiff performed a wide range of daily activities, Tr. 484-490, and, on October 30, 2014, Dr. Curtis examined Plaintiff and, other than general observations of Plaintiff

exhibiting discomfort and a finding of tenderness in the right lateral belly, all physical examination results were noted as either "not painful" or "normal," Tr. 477-480. State agency reviewers, Wayne Hurley, M.D., and Gordon Hale, M.D., dated October 2013 and January 2014 respectively, opined Plaintiff could perform a range of light work[6] related tasks. Tr. 27, 90-91, 100-101.

The foregoing medical evidence demonstrates Plaintiff did not have greater functional limitations as a result of his abdominal issues than as assessed by the ALJ in the RFC determination.

The ALJ next indicated Plaintiff's statements to medical providers suggested symptom magnification and non-compliance with medical advice. Tr. 26. An ALJ's decision to discredit a claimant's statements may be supported by a claimant's tendency to exaggerate, *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001), as well as a claimant's noncompliance with medical care, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

On August 24, 2013, Plaintiff walked in to the Yakima Regional Medical and Cardiac Center and reported he had just undergone an endoscopic retrograde cholangiopancreatography (ERCP) in Seattle, had chronic pancreatitis, and had run out of his pain medications (Dilaudid). Tr. 26, 421. However, as noted by the ALJ, the ERCP showed, at most, mild, early pancreatitis, not chronic pancreatitis, Tr. 295, and the abdominal examination performed on that same date, August 24, 2013, was normal, Tr. 422. Tr. 26. The Court agrees that the foregoing medical evidence, coupled with the fact that Plaintiff had again run out of his pain

///

---

[6]Light level work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds and requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

medications early,[7] suggests Plaintiff was engaged in symptom magnification and not taking his medications as prescribed. The ALJ properly discounted Plaintiff's credibility on the basis of symptom magnification and medical noncompliance.

The ALJ next held that Plaintiff's activities of daily living showed greater functional abilities than as alleged by Plaintiff. Tr. 27. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603.

The ALJ noted that, in addition to completing personal care, household chores and shopping, Tr. 275-277, Plaintiff occasionally worked for a friend polishing/grinding metal parts as well as restoring antique trucks and/or repairing race cars, Tr. 70-71. Tr. 27. Moreover, as previously indicated, Plaintiff reported to Dr. Schneider that he performed leisure activities such as riding horses, riding bulls, fishing, camping, going on drives, dancing and doing things with his children. Tr. 488. While one does not need to be "utterly incapacitated" to be disabled, *Fair*, 885 F.2d at 603, it was proper for the ALJ to find Plaintiff's reported activities were inconsistent with his allegations of disability and thus detracted from his overall credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").
///

---

[7] The ALJ further stated Dr. Ong commented that while Plaintiff was supposed to be taking Percocet in March 2013, he "ran out" and instead was taking "some [D]ilaudid from his cousin which he states acts faster [and] longer than Percocet," Tr. 347, and, in July 2013 and April 2014, Plaintiff became angry when Henry Y. Kim, M.D., refused to prescribe narcotics, Tr. 482. Tr. 27. Dr. Kim noted Plaintiff had a history of running out of prescription narcotics. Tr. 27, 482.

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

While the ALJ additionally mentioned Plaintiff's marijuana usage, which made his providers reluctant about prescription opioids, Tr. 26, and Plaintiff's suspended driver's license as a non-disability barrier to finding a job, Tr. 27, the Court is not convinced these were factors the ALJ specifically weighed in considering Plaintiff's symptom testimony. Given the ALJ's other supported reasons for finding Plaintiff less than fully credible, the Court finds any error with respect to these two accounts was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes*, 881 F.2d at 751. It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED November 6, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE